Joshua R. Woodard (#015592)
Jennifer R. Yee (#029651)
Delilah R. Cassidy (#037407)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 5004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: jwoodard@swlaw.com
jryee@swlaw.com
dcassidy@swlaw.com
*Attorneys for Plaintiff USI Insurance Services, LLC*

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| USI Insurance Services, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Alliant Insurance Services, Inc., a California corporation, William J. Havard II and Sabrina Havard, husband and wife, and Robert Engles and Hope Engles, husband and wife, Jenise Purser and Adam Purser, husband and wife, Justin Walsh and Sara Walsh, husband and wife,<br><br>Defendants. | No. 2:23-cv-00192-SMB<br><br>**PLAINTIFF USI INSURANCE SERVICES, LLC'S MOTION TO EXCLUDE TESTIMONY AND EXPERT OPINION OF JAMES D. VAUGHN** |

*Daubert*'s overarching principle is that expert testimony must be reliable. Expert testimony based solely on assumptions from counsel does not meet this threshold; nor does it suffice when an expert fails to apply any expert methodology. Based on these principles, the opinions of proffered computer forensics expert James Vaughn should be excluded.

Alliant Insurance Services, Inc. produced metadata for PDFs that shows William "Bill" Havard breached his non-service covenant while at Alliant. Specifically, the metadata of four PDF client renewal summaries identifies Havard as the author (i.e., the creator) of those PDFs. Because the create and last modified date and time of the PDFs are identical,

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

*the PDFs could not have been modified after they initially were created by Havard*. Through Vaughn, Defendants theorize that Justin Walsh added client information to blank "templates" that Havard had created. To support this theory, Vaughn reviewed metadata of ***undisclosed*** Word documents that purportedly identify Walsh as the last author. Then, Vaughn compared the content (which any layperson can do) of the blank "templates" Havard created to the content of the PDFs; rather than compare the content of the ***undisclosed*** Word documents to the content of the PDFs.

Vaughn's failure to analyze the metadata of the PDFs and/or the content of the ***undisclosed*** Word documents creates an insurmountable, and fatal, analytical gap. With metadata of the PDFs at everyone's (and importantly, the jury's) disposal, there is no reason for an "expert." The Court should stop Defendants' efforts to proffer this unreliable testimony under the guise of an "expert."

Vaughn's also provides opinions concerning the forensic copying of Havard, Walsh, Robert Engles', Jenise Purser's, Amy Phalen's, and Lori Hartman's (together, the "Departed Employees") personal devices and the related file listings made by someone else; the deletion of certain USI-worked related files from Havard's and Engles' personal devices; and whether a November 30, 2022 email and attachment that Havard sent to Alliant were present on two Alliant devices. These opinions should similarly be excluded as unreliable, as Vaughn overly relies on conversations with and unquestioned direction from Defendants' counsel.

Plaintiff respectfully requests to exclude Vaughn's testimony and opinions listed in his April 24, 2023 Initial Expert Report (the "Report"), pursuant to Federal Rules of Evidence ("Rule") 702 and 403 and Federal Rule of Civil Procedure 26.

## I. BACKGROUND

This Motion focuses on two discrete issues, which will be explored in turn.

**A. McDaniel Told Havard He Deleted the Havard Contracts Email but Dizdari Testified He Did Not and Alliant Produced in Discovery.**

Havard sent USI Confidential Information to Alliant representatives while he was still employed by USI. Specifically, on November 30, 2022, at the time Havard was employed at USI and was considering employment at Alliant, Havard sent Alliant executive Charles McDaniel a zip file of internal USI "Contract Emails." (the "**Havard Contracts Email**").[1] McDaniel sent Havard's email and the zip file to Alliant executive Bledion Dizdari and copied Alliant's in-house counsel.[2] Dizdari testified the email was still in his inbox and he took ***no steps to delete it***.[3] McDaniel replied to Havard on December 2, 2022 saying he "deleted" the email.[4] But, McDaniel's statement that he had deleted the email was not true as he still had the email and zip file in his emails.[5] Indeed, Alliant produced the document and zip file McDaniel (mis)represented he had deleted, evidencing not only his failure to delete them but also McDaniel's lie about it. In brief, during his USI employment, Havard sent USI's Confidential Information to Alliant; and Alliant kept it.

**B. Tim Porreca Testified at the PI Hearing on the Metadata Issue and the Court Understood and Credited His Testimony.**

The second issue involves metadata of four PDFs authored by Havard while he was employed at Alliant (the "**Metadata Issue**").

During expedited discovery, Defendants deposed USI's Rule 30(b)(6) corporate representative, Benjamin Greer, who testified regarding his then-current knowledge of the Metadata Issue and that Tim Porreca—USI's Corporate Vice President and Chief Technology Officer—had information in connection with this subject. USI then supplemented its responses to Defendants' First Set of Requests for Production of Documents and Interrogatories that detailed USI's knowledge of the Metadata Issue.

---

[1] Ex. 1 ¶ 12.

[2] *Id.* ¶ 13.

[3] Ex. 4 at 30:6–18; 31:2–16.

[4] *See* Ex. 4.1.

[5] Ex. 2 at 180:24–181:7.



Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

During the Preliminary Injunction hearing in April 2023, Porreca testified about the Metadata Issue. He explained that metadata identifies the creator of a document as the author;[6] and, when the create date and time and last modified date and time are the same, that document necessarily has not been modified after its creation.[7]

The four emails and PDF client renewal summaries sent to certain USI clients (CBRE, STORE Capital, and Western National Group) were entered into evidence during the Preliminary Injunction hearing.[8] Porreca then walked the Court through the metadata identifying Havard as the Author and identifying that the create date and time and the last modified date and time of the PDFs are the same.[9]

The chart below identifies that, during the time they were employed by Alliant, Walsh sent emails with attachments that had been created by Havard. Notably, the metadata of the four PDFs authored by Havard reflects that the create date and time and the last modified date and time are identical. *See* highlights in the chart below.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

[6] Ex. 3 at 32:5–10.

[7] *Id.* at 37:23–38:2.

[8] *See* Exs. 3.1–3.4.

[9] *See* Ex. 3 at 34:22–46:7.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

**METADATA PROVIDED BY ALLIANT FOR AT-ISSUE EMAILS AND PDFs[10]**

| Bates Label | Email From | Email Subject | File Author | File Name | Create Date | Last Modified | Email Sent Date Time |
|---|---|---|---|---|---|---|---|
| ALLIANT 1281–82[11] | Justin Walsh [Justin.Walsh @alliant.com] | CBRE Client Program - '23 Pollution Renewal | Justin Walsh | CBRE Client Program - '23 Pollution Renewal | 2/17/2023 5:58 PM | 2/17/2023 5:58 PM | 2/17/2023 11:10 AM |
| **ALLIANT 1283–88[12]** | | | **Bill Havard** | **CBRE - Client Program - Renewal Summary 2023 - 2.17.23.pdf** | **2/17/2023 11:04 AM** | **2/17/2023 11:04 AM** | |
| ALLIANT 6260-61[13] | Justin Walsh [Justin.Walsh @alliant.com] | STORE Capital - Pollution Program Renewal | Justin Walsh | STORE Capital - Pollution Program Renewal | 3/13/2023 6:12 PM | 3/13/2023 6:12 PM | 2/27/2023 9:43 AM |
| **ALLIANT 6262-66[14]** | | | **Bill Havard** | **STORE - Pollution Portfolio - Renewal Summary 2023.pdf** | **2/27/2023 8:54 AM** | **2/27/2023 8:54 AM** | |
| ALLIANT 6329–33[15] | Justin Walsh [Justin.Walsh @alliant.com] | RE: SPUS8 Glendale LP c/o CBRE Global Investors, LLC - Pollution Liability Policy #W1AD39160101 - Expires 3/1/2023 | Justin Walsh | RE: SPUS8 Glendale LP c/o CBRE Global Investors, LLC - Pollution Liability Policy #W1AD39160101 - Expires 3/1/2023 | 3/13/2023 6:13 PM | 3/13/2023 6:13 PM | 2/27/2023 2:23 PM |
| **ALLIANT 6334–37[16]** | | | **Bill Havard** | **CBRE Renewal Summary 2023 - 2.27.23.pdf** | **2/27/2023 2:21 PM** | **2/27/2023 2:21 PM** | |
| ALLIANT 6417[17] | Justin Walsh [Justin.Walsh @alliant.com] | WNG - '23 Pollution Renewal | Justin Walsh | WNG - '23 Pollution Renewal | 3/13/2023 6:14 PM | 3/13/2023 6:14 PM | 2/27/2023 11:31 AM |
| **ALLIANT 6418–22[18]** | | | **Bill Havard** | **WNG - Pollution Portfolio - Renewal Summary 2023.pdf** | **2/27/2023 11:15 AM** | **2/27/2023 11:15 AM** | |

Walsh simply could not have edited the PDF that Havard authored because the create date and time and the last modified date and time are the same.[19] If Walsh, in fact, had edited the PDFs authored by Havard, the create date and time (when Havard created the PDF) and the last modified date and time (when Walsh edited) would had to have been

[10] *See* Ex. 3.5 (columns A–B, H–J, T, X).
[11] Ex. 3.1; Ex. 3 (row 232).
[12] Ex. 3.1; Ex. 3 (row 233).
[13] Ex. 3.2; Ex. 3 (row 1139).
[14] Ex. 3.2; Ex. 3 (row 1140).
[15] Ex. 3.3; Ex. 3 (row 1143).
[16] Ex. 3.3; Ex. 3 (row 1144).
[17] Ex. 3.4; Ex. 3 (row 1160).
[18] Ex. 3.4; Ex. 3 (row 1161).
[19] Ex. 3 at 37:15–38:6.

different.[20] Here, they are not and, rather, the create date and time and the last modified date and time are identical. ***No edits were made to the PDFs by Walsh or anyone for that matter***.[21] In fact, there is no evidence that anyone other than Havard even touched the documents.[22]

Havard testified he created client renewal summaries while at Alliant,[23] but did not author or edit the four PDFs at issue.[24] He said he created different documents (the "templates"[25] which are stored in a shared folder that Alliant Phoenix employees can access) and emailed them to the Alliant environmental team (but not the other USI employees who moved to Alliant).[26] Walsh testified that he drafted the PDFs and emails but that Havard did not help, review, or approve them before Walsh emailed them to the clients.[27]

Having considered the testimony, metadata of the PDFs, and the content of the PDFs, the Court found that USI had a likelihood of success on the merits of its breach of contract claim against Havard.[28] The Court found that "[t]he metadata shows Havard prepared these summaries and they were not subsequently modified before being transmitted to clients."[29] Thus, the Court was able to consider this evidence and make credibility determinations regarding Havard's and Walsh's testimony, all without needing expert testimony.

### C. Vaughn's Unsupported Opinions Are Based on Conversations with Counsel and Metadata He Did Not Review.

Vaughn's proffered report consists of only 16 paragraphs, half of which discusses Defendants' retention of Vaughn's employer (iDiscoverySolutions ("iDS")) in anticipation

[20] *Id.* at 37:15–38:2; 51:19–52:2.
[21] *Id.* at 38:3–6.
[22] *Id.* at 38:7–9.
[23] *Id.* at 111:10–13.
[24] *Id.* at 109:11–19; 110:4–22; 111:5–9.
[25] *Id.* at 111:19–21.
[26] *Id.* at 114:5–18.
[27] *Id.* at 418:21–419:8; 442:19–444:1.
[28] (Doc. 111 at 12.)
[29] *Id.*

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

of Alliant hiring new employees, iDS's compensation, Vaughn's credentials, and disclaimers.[30] The remaining mere twenty-four sentences are Vaughn's attempt to provide a complete statement of all opinions he will express and the basis and reasons for them, as required by Federal Rule of Civil Procedure 26(a)(2)(B)(i). He fails to do so. This remaining portion of the Report can be broken into four parts.

First, Vaughn states that iDS made copies of the Departed Employees' personal devices beginning January 25, 2023 and provided file listings and documents to Defendants' counsel.[31] Second, Vaughn states that he has not seen an allegation or forensic evidence that a Departed Employee exfiltrated USI data.[32] However, his Report says there were "***USI work-related files***" on Engles' personal email and laptop and Havard's Box.com account in February 2023.[33] His understanding that "***USI work-related files***" were not improperly exfiltrated is based solely on Defendants' counsel's say-so.[34] The Report then states that iDS ***deleted*** certain "***USI work-related files***" off those devices per Defendants' counsel's instruction.[35] *This is a shocking, troubling admission*. Yet, inexplicably, Defendants' counsel refuses to produce these ***"USI work-related files"*** listed in Exhibit C to his Report because Vaughn did not "rely" on them in preparing his Report.

Third, Vaughn states that he reviewed the forensic images of McDaniel's and Dizdari's Alliant computers to see if the Havard Contract Email, attachment, or any files within the "Contract Emails.zip" attachment were on either McDaniel's or Dizdari's Alliant computers or disseminated by McDaniel or Dizdari.[36] Neither of the forensic images he analyzed were disclosed with his Report. USI finally obtained them over *a year and a half*

---

[30] Ex. 1 ¶¶ 1–5, 7.

[31] Ex. 1 ¶¶ 8–9; Ex.1.B.

[32] Ex. 1 ¶ 10.

[33] Ex. 1 ¶ 11; Ex. 1.C.

[34] Ex. 1 ¶ 11; Ex. 2 at 138:18–139:3 ("It's just my understanding. **Again, if it'a my understandings it's coming from counsel** which is who we had the conversations - the communications with, not Mr. Engles directly.)"

[35] Ex. 1 ¶ 11; Ex. 1.C.

[36] Ex. 1 ¶¶ 12–15.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

after he disclosed his Report. The images list the names of the files and emails in McDaniel's and Dizdari's email accounts and elsewhere on their computers.[37] Vaughn's "analysis" was merely searching the name, "Contracts Emails.zip" and the title of each file therein in the Excels.[38] *Vaughn's conclusions* that "neither the email, attachment, or any file from within the 'Contracts Emails.zip' were contained on either device, and there was no evidence of further dissemination" *are blatantly incorrect*.[39] He admitted as much during his deposition.[40]

Vaughn's <u>fourth</u> and final opinion is on the Metadata Issue –namely, that:

> I am aware that USI is alleging that Mr. Havard is servicing or has serviced certain at issue clients ***based on documents produced by Alliant in this litigation that contain metadata reflecting Bill Havard as the "Author".*** My investigation and forensic analysis revealed that USI misunderstands Havard's role in the creation of Alliant documents based on this metadata field. A different employee named Justin Walsh used templates created by Mr. Havard, then populated them with client information. ***I have reviewed the metadata and the content of the files listed in Exhibit D***, and based on my understanding of what constitutes client data, the versions "Last Authored" by Justin Walsh contain client information, while the templates created by Bill Havard do not and appear to be templates.[41]

Exhibit D lists the metadata for eight Word documents (.docx)—***none of which are the PDFs that were produced by Defendants in this case.***[42] Four of them are "templates" and four are undisclosed, different Word documents that identify Walsh as the last author.[43] During his deposition, ***Vaughn admitted he did not review the metadata of the four PDFs at issue.***[44] Further, and contrary to his Report, ***Vaughn also admitted he did not review the***

[37] Ex. 2 at 188:20–24.

[38] Ex. 1 ¶ 12; Ex. 2 at 201:5–11

[39] Ex. 1 ¶ 15.

[40] Ex. 2 at 180:24–181:7.

[41] Ex. 1 ¶ 16 (emphasis added).

[42] *See* Ex. 1.D.

[43] *See id.*; Ex. 2 at 220:10:13; 253:19–21.

[44] Ex. 2 at 240:7–12.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

***content of the four undisclosed Word documents listed in Exhibit D***.[45] Vaughn's so-called expert analysis and opinion are purposefully convoluted—indeed, he does so because the metadata of the PDFs dispels his theory. To be sure, the four PDFs at issue were not modified by anyone after Havard created them.[46] Vaughn's Report tries to inject confusion into this straightforward fact and will do nothing more than confuse the jury.

Vaughn's Report preceded the PI Hearing and merits discovery. Defendants deposed Porreca who testified in accordance with his PI Hearing testimony that was credited by the Court. Vaughn tellingly has not issued any supplemental report.

## II. ARGUMENT

Defendants have the burden of proving that Vaughn's expert testimony is admissible under Rule 702 and the *Daubert* standard. *Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 989 (D. Ariz. 2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Rule imposes on the trial courts a gatekeeping obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable" and thus helpful to the jury's determination of facts at issue. *Daubert*, 509 U.S. at 589. In other words, all expert testimony must be based on reliable facts and a reliable methodology that was appropriately applied by the expert. *Id.* at 592 n.10; *see Gen. Elec. Co. v. Joiner*, 522

[45] *Id.* at 226:25–227:5.

[46] (Doc. 111 at 12).; Ex. 3 at 37:15–38:2; 51:19–52:2.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

U.S. 136, 146 (1997).

The fundamental purpose of the reliability inquiry is to "rule out 'subjective belief or speculation.'" *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993) (quoting *Daubert*, 509 U.S. at 590). Accordingly, an expert "may not merely parrot or recite factual evidence, without offering a valid expert opinion based on such evidence." *Deem v. Baron*, No. 2:15-cv-00755-DS, 2020 WL 114138, at *13 (D. Utah Jan. 10, 2020) (citation omitted)). Rather, the expert opinion must have "a traceable, analytical basis in objective fact." *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998). This is a critical inquiry for the trial court "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063–64 (9th Cir. 2002).

A court may also exclude expert testimony under Rule 403 if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice or misleading the jury. *Daubert*, 509 U.S. at 596. As the U.S. Supreme Court stated, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* at 595.

Vaughn's proffered opinion on the Metadata Issue should be excluded because it is: (1) not helpful to the jury and contains no application of his purported expertise; (2) not based on sufficient facts or data because he ignores the metadata of the PDFs at issue; (3) simply parroting unverified statements from Defendants' counsel; (4) not the product of reliable principles and methodology; and (5) not supported in the Report by a complete statement of the basis for it, as required. Vaughn's other opinions similarly should be excluded because they are unreliable.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

**A. <u>Vaughn's Opinion on the Metadata Issue Should be Excluded Because It Will Not Help the Jury.</u>**

Expert testimony is only admissible on matters where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the

evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Accordingly, expert testimony is improper on matters the jury can understand and decide using its common knowledge and common sense. *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002); *In re Apollo Grp. Inc. Sec. Litig.*, 527 F.Supp.2d 957, 961–62 (D. Ariz. 2007).

There may be instances where a computer forensic expert is needed because the evidence is "so technical or complex that a jury could not have grasped it without the aid of experts." *Torres v. Johnson Lines*, 932 F.2d 748, 751 (9th Cir. 1991). That is not the case here. The only evidence related to the Metadata Issue is the metadata in Exhibit D of Vaughn's Report, the "templates" that Havard authored, the metadata of the PDFs, and the PDFs themselves. Like the metadata of the PDFs, the metadata of the "templates" and undisclosed Word documents in Exhibit D are in human readable form.[47] A jury can read the plain English in Exhibit D without expert testimony just as the Court read the plain English of the metadata of the PDFs at the PI Hearing without expert testimony.[48] The second part of Vaughn's analysis is a simple, side-by-side comparison of the content of the "templates" and the four PDFs.[49] A lay person certainly has the knowledge and experience to look at two documents and see if they are different. Thus, the jury does not require expert testimony to understand the evidence here.

Vaughn's opinions and testimony on the Metadata Issue are also unhelpful to the jury because he fails to apply any forensic expertise. Courts performing their gatekeeper function "analyze not what the experts say, but the basis they have for saying it." *Wendell v. GlaxoSmithKlein LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). It is well-established that "an expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate [his] opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness's expertise) rather than simply an opinion broached by a purported expert." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996).

---

[47] *See* Ex. 3 at 31:14–16; Ex. 1.D.

[48] (Doc. 111 at 12.)

[49] Ex. 1 ¶ 16; Ex. 2 at 219:12–23.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

If an expert opinion does not "add something to the jury's understanding" then "the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403." *Id.*

Despite purporting to do so, Vaughn does not engage in a "forensic analysis." Indeed, Vaughn did not run an algorithm or dig into potential errors in any document metadata. An Alliant employee drafted Exhibit D and Defendants' counsel provided it to Vaughn.[50] From there, Vaughn merely regurgitates what Exhibit D says—the "templates" identify Havard as the author and last author while the undisclosed Word documents identify Havard as the author but Walsh as the last author.[51] As Vaughn testified during his deposition, the "forensic metadata where it shows Mr. Walsh's name, simply shows the document was modified."[52] This opinion reflects no relationship to his computer forensic expertise and thus adds nothing to the jury's understanding. *See Hall*, 93 F.3d at 1343.

The Court should also exclude Vaughn's opinion because it would unduly prejudice USI. Vaughn's imprimatur gives the impression that his "analysis" is based on his expertise. *See Mukhtar*, 299 F.3d at 1063–64. It is not.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

### B. <u>Vaughn's Opinion on the Metadata Issue Should Be Excluded Because He Failed to Consider the Metadata of the PDFs at Issue.</u>

When an expert ignores critical data in forming his opinions, he fails to satisfy Rule 702 and *Daubert*. A court gauging reliability may consider "[w]hether the expert has accounted for obvious alternative explanations." Fed. R. Evid. 702 advisory comm. notes 2000 amendments. An expert is not permitted to conveniently disregard contrary evidence or evidence that would lead to different results. *See MicroStrategy*, 429 F.3d at 1355–56 ("[T]he district court has the responsibility to exclude an expert opinion that overlooks factors that render the testimony unreliable and/or speculative.").

Vaughn's opinion is not based on sufficient facts or data and is unreliable because

---

[50] Ex. 2 at 221:13–222:17.

[51] *Id.* at 212:20–23.

[52] *Id.* at 63:6–8.

he did not consider critical evidence—the metadata of the four PDFs at issue.[53] He testified that he is "not offering an opinion on the PDFs because [he] understand[s] they were converted."[54] His conscious disregard of the critical metadata evidence evaporates any indicia of reliability (if any existed) and renders his opinion inherently unreliable and inadmissible. *MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-CV-1096-SEB-TAB, 2009 WL 1916728, at *4 (S.D. Ind. June 29, 2009) (excluding expert opinion because that failed to consider critical fact that defendant company would and could terminate plaintiff's rights under agreement at issue).

Vaughn's failure to consider the metadata of the PDFs also creates an insurmountable analytical gap in his reasoning because he cannot connect the undisclosed Word documents to the PDFs. During his deposition, Vaughn initially asserted he "knew" the undisclosed Word documents were the PDFs because they were loaded into a production environment and converted to PDF to produce them.[55] However, were that the case, the metadata of the produced document may still show the file name as a Word document (.docx) file.[56] Here, the metadata of the PDFs identifies them as PDFs (.pdf) files.[57] Vaughn speculated about other ways the undisclosed Word documents became the PDFs as he did not know.[58] Eventually he admitted that his connection between the undisclosed Word documents and the PDFs at issue is based solely on his conversation with Defendants' counsel: "***I was provided the PDF versions by counsel with the understanding that the template is the template, modified to the modified. I looked at those contents and then also looked at this metadata. That's how I gained my information***."[59]

In doing so, Vaughn ignored *the* critical data to form his opinion on the Metadata

[53] *Id.* at 240:7–12.

[54] *Id.*

[55] *Id.* at 229:5–14; 229:23–230:7.

[56] *Id.* at 229:16–22.

[57] *See supra* PDF metadata chart.

[58] *See, e.g.*, Ex. 2 at 233:8–14.

[59] *Id.* at 237:13–17 (emphasis added).

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

Issue and instead based it on Defendants' counsel's say-so. This testimony also demonstrates that Vaughn was aware of readily apparent facts and data that posed obvious alternative explanations for the metadata identifying Havard as the author, yet he failed to consider, let alone analyze or address them. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) ("A district court is justified in excluding evidence if an expert 'utterly fails to offer an explanation for why the proffered alternative cause' was ruled out."). As the Supreme Court explained in *Joiner*, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999). That is the case here.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

### C. **<u>Vaughn's Sole Reliance on Unverified Information and Statements of Defendants' Counsel Renders His Opinion on the Metadata Issue Unreliable.</u>**

Vaughn refused to review the critical metadata of the PDFs at issue. Instead, he based his opinion solely upon unverified assumptions and information from Defendants' counsel. As noted above, Vaughn admits that his opinions relied on conversations with, and the Excel file provided by, Defendants' counsel.[60] While an expert is "permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him," in doing so the "the expert must incorporate the information supplied to him into his underlying facts, independently review the information, and then formulate . . . an opinion that relies upon that [and] any other relevant information." *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-CV-00341-SEB-DM, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009). In other words, "when an expert relies upon information given to him by a party or counsel, he must independently verify that information before using it in his [analysis]." *Id.*

Here, Vaughn made no effort to independently verify the information, yet based his opinion solely upon it. *See Colby v. Newman*, No. 211CV07413SVWRZX, 2012 WL

[60] *Id.* at 237:13–17; 63:6–8.

12885118, at *6 (C.D. Cal. Nov. 20, 2012) (stating an expert may rely upon information provided him by counsel but that cannot form the only basis for his opinions). Even worse, he ***refused*** to do so. For example, Vaughn vehemently testified he had no reason to speak with Havard to independently verify Havard's role in creating the PDFs.[61] *See e.g., IceMOS Tech. Corp. v. Omron Corp.*, No. CV-17-02575-PHX-JAT, 2019 WL 5960069, at *14 (D. Ariz. Nov. 13, 2019) (excluding expert that relied on assumptions provided by counsel wholly without foundation). Vaughn blindly assumed that information from Defendants' counsel is accurate, complete, and appropriate to determine whether Havard created the PDF client renewal summaries. Thus, Vaughn cannot demonstrate that the underlying data that his opinion is entirely based his upon is reliable. For this reason alone, this Court should exclude Vaughn's opinion.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

### D. Vaughn's Opinion on the Metadata Issue Should be Excluded Because He Fails to Apply a Reliable Methodology.

As a final and additional reason Vaughn's opinion on the metadata issue should be excluded is because the Report, on its face, fails to articulate how he came to his conclusion and what methodologies or evidence substantiate that conclusion. *Walsh v. LG Chem Am.*, No. CV-18-01545-PHX-SPL, 2021 WL 4859990, at *3–*5 (D. Ariz. Oct. 19, 2021) (excluding expert causation opinion on where report failed to explain how he reached conclusion and largely restated his conclusions in deposition).

During his deposition, Vaughn could not identify the factual basis for his assumptions or provide any assurance that his conclusions were based upon a method that is generally accepted in the field. As detailed above, Vaughn did not perform any forensic analysis to reach his conclusion. Vaughn testified during his deposition that he formed the metadata opinion "based on the review of the metadata as well as the comparison of the content between the two documents as well as the – that pretty much sums it up."[62] Vaughn further testified, the "forensic metadata where it shows Mr. Walsh's name, just simply

---

[61] *Id.* at 61:3–62:19.

[62] *Id.* at 217:3–6.

shows the document was modified" and when he did the content comparison "you can see the added information, which I understand to be client information."[63] He then summarily concluded that Walsh populated "templates" with client information. This is not expert methodology. During his deposition, Vaughn said he talked to Walsh about the Metadata Issue after he issued his Report, but that he was not relying on that conversation to support his opinions.[64] Looking at only the metadata, however, Vaughn could not support his opinion. When asked during his deposition if the metadata would identify Walsh as the last author if Havard added the client information but Walsh subsequently added a space to the document, Vaughn responded: "***It doesn't seem possible unless you are accusing Mr. Walsh of being the liar***."[65] This is not an expert opinion at all, but rather the opinion of Defendants' counsel restated as Vaughn's "understanding."

*Daubert* requires the Court to act as a gatekeeper by prohibiting Vaughn from acting merely as the "mouthpiece" of Defendants' counsel's theories. *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008) ("One of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion."). For this additional reason, the Court should exclude Vaughn's putative expert opinions and testimony on the Metadata Issue.

**E. <u>Vaughn's Opinion on the Metadata Issue Should be Excluded Because the Report Is Not a Complete Statement of the Basis and Reasons for His Opinion.</u>**

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that the written report of an expert witness contain "a complete statement of all opinions the witness will express and ***the basis and reasons for them***." (emphasis added). Paragraph 16 of the Report is the only place where Vaughn's discusses the Metadata Issue. He states that: "***I have reviewed the metadata and the content of the files listed in Exhibit D***, and based on my understanding

[63] *Id.* at 63:6–14.

[64] *Id.* at 59:14–60:10.

[65] *Id.* at 63:15–25 (emphasis added).

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

of what constitutes client data, the versions "Last Authored" by Justin Walsh contain client information, while the templates created by Bill Havard do not and appear to be templates."[66] Vaughn testified, however, that his opinion on the Metadata Issue is based on his review of the content of the PDFs, none of which are listed in Exhibit D.[67] Further and contrary to his Report, Vaughn admitted that he did ***not*** review the content of the ***undisclosed*** Word documents listed in Exhibit D.[68] Because Vaughn's Report does not contain a complete statement of the basis and reasons for his opinion on the Metadata Issue, the Court should exclude his opinion.

**F. Vaughn's Remaining Opinions Are Unreliable and Should be Excluded.**

The other three opinions in Vaughn's Report should be also excluded. First, Vaughn's testimony regarding the forensic copying of the Departed Employees' personal devices and the file listings made from them is unreliable.[69] Vaughn admitted that he was not involved in either process, that the collections were "separate work performed by iDS," and he did not know what file listings were provided to Defendants' counsel.[70] Second, Vaughn's testimony about certain ***"USI work-related files"*** that iDS deleted from Havard's and Engles' personal devices should also be excluded.[71] Vaughn admitted this testimony, like his opinion on the Metadata Issue, relies solely on conversations with and unquestioned direction from Defendants' counsel.[72]

Lastly, Vaughn's opinion and testimony regarding the Havard Contract Email is unreliable and should be excluded.[73] Vaughn's Report does not state when or how forensic copies of Dizdari and McDaniel's Alliant computers were made.[74] Furthermore, his opinion

[66] Ex. 1 ¶ 16 (emphasis added).
[67] Ex. 2 at 226:20–22.
[68] *Id.* at 226:25–227:5.
[69] Ex. 1 ¶¶ 8–9; Ex. 1.B.
[70] Ex. 2 at 116:14–20; 126:18–127:1.
[71] Ex. 1 ¶ 11; Ex.1.C.
[72] Ex. 2 at 136:6–139:22.
[73] Ex. 1 ¶¶ 12–15.
[74] *Id.* at 176:18–177:2; 178:4–16.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

is not based on reliable methodology. All Vaughn did was hit control + F looking for file names on excel sheets to see if they matched the file names in the Havard Contract Email.[75] Vaughn admitted he did not review the content of the files on the Alliant computers[76] nor (contrary to his Report) the Havard Contract Email itself.[77] Vaughn's "expert analysis" did not even account for the possibility that McDaniel or Dizdari changed the name of the files when saving them to their Alliant devices.[78] Vaughn's opinion is also unreliable because it is contradictory and blatantly incorrect. He states in his Report that McDaniel sent the Havard Contracts Email to Dizdari but then concludes it was not found on Dizdari's Alliant computer (which captured deleted items).[79] Vaughn testified that he did not evaluate why this was the case when preparing his Report and he offered no explanation for it during his deposition.[80] Along the same lines, Vaughn opines the Havard Contracts Email was not on McDaniel's Alliant computer[81] even though it is, which Vaughn admitted during his deposition.[82] For all these reasons, the Court should exclude the remainder of Vaughn's opinions and testimony in his Report.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

## III. CONCLUSION.

The Court did not need Vaughn's testimony to analyze the metadata for the PDFs at issue and the jury does not either. Like his other opinions, they are unreliable and do not satisfy Rule 702 or 403. The Report fails to even to meet the standards of Federal Rule of Civil Procedure 26. His unhelpful, unreliable testimony will confuse the jury. Accordingly, the Court should grant this Motion and exclude Vaughn's testimony in its entirety.

---

[75] *Id.* at 201:5–11.

[76] *Id.* at 186:9–19.

[77] *Id.* at 173:16–174:9.

[78] *Id.* at 197:18–198:22.

[79] Ex. 1 at ¶ 13, 15; Ex. 2 at 196:8–19.

[80] Ex. 2 at 190:12–22; 195:19–196:1.

[81] Ex. 1 at ¶ 15.

[82] Ex. 2 at 180:24–181:7.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

DATED December 20, 2024.

SNELL & WILMER L.L.P.

By: */s/ Delilah R. Cassidy*

Joshua R. Woodard
Jennifer R. Yee
Delilah R. Cassidy
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
*Attorneys for Plaintiff USI Insurance Services, LLC*

4862-8701-5906