WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| USI Insurance Services LLC, | No. CV-23-00192-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Alliant Insurance Services Incorporated, et al., | |
| Defendants. | |

The matter before the Court stems from Plaintiff USI Insurance Services LLC's ("USI") lawsuit against Defendants Alliant Insurance Services Incorporated ("Alliant"), William J. Havard III, Robert Engles, Jenise Purser, and Justin Walsh (collectively, "Defendants," or without referring to Alliant, the "Individual Defendants") relating to allegations that, among other things, they engaged in the improper solicitation of USI's clients on Alliant's behalf after resigning from USI. Defendants now move to exclude certain trial testimony and the opinions of USI's industry expert witness, Thomas R. Linn (Doc. 261 (Defendants' Motion to Exclude Certain Trial Testimony and Opinions of Thomas R. Linn)). The parties have fully briefed the pending Motion.[1] For the following reasons, the Court will **grant** the Motion (Doc. 261).

## I.   LEGAL STANDARD

A party seeking to present an expert's testimony carries the burden establishing that testimony's admissibility. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Federal

---

[1] The briefings for Mr. Linn are available at ECF Nos. 301 and 325. (*See also* Doc. 269.))

Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) govern the admissibility of such testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible only if it is relevant and reliable. *Daubert*, 509 U.S. at 589. Expert testimony is "relevant" if it fits the facts of the case and logically advances "a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995). Further, the testimony is "reliable" if the expert's opinion is reliably based in the "knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert*, 509 U.S. at 592–93. First, the trial judge must determine that the proposed expert witness testimony is based on scientific, technical, or other specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). To assess reliability, courts may consider "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017). Second, the trial court must ensure that the proposed testimony is relevant—that it "will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.

The Rule 702 inquiry is flexible and must focus "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. "[I]t is a matter for the finder of fact to decide what weight to accord the expert's testimony" after it has passed

the two-part analysis to determine its admissibility. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998). Opposing experts or tests that the factfinder may be confronted with do not preclude admission but rather go to the weight of the evidence. *Id.* at 1230–31. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II. DISCUSSION

### A. Mr. Linn's Opinions

Mr. Linn is USI's insurance industry expert witness. (Doc. 261 at 2.) Defendants move to exclude his opinion and testimony concerning (1) certain "market multiples" derived from other undisclosed insurance transactions and (2) opinions on the enforceability and interpretations of the restrictive covenants in the Individual Defendants' employment agreements. (*Id.*)

#### 1. Market Multiples

USI plans to offer Mr. Linn's testimony on the process for buying, selling, and acquiring books of business ("BOB(s)")[2] in the commercial insurance industry and the typical pricing for such assets. (Doc. 269-2 at 5; *see generally id.* at 3–19 (Mr. Linn's Expert Report).) Mr. Linn opines that industry uses "multiples of revenue" as a rule of thumb to price of a firm or BOB and "multiples of EBITDA" to calculate the sale price. (*Id.* at 11.) He further provides specific ranges of multiples for revenue and for EBITDA in which the range covers standard business risks in the insurance industry and unique, transaction-specific risks. (*Id.*)

Defendants attack Mr. Linn's factual basis for reaching the proffered multiples. (*See* Doc. 261 at 9–15; *see generally* Doc. 269 (sealed).) According to Defendants, Mr. Linn based his multiples every transaction he worked on during his twenty-two-year career, including those concerning the sale of entire insurance brokerage firms and isolated BOBs. (Doc. 261 at 10–11; *see also* Doc. 269-1 at 13–23.) Defendants also point out that when

---

[2] A BOB generally consists of list of clients and the associated revenue that an insurance producer generates. (*Id.* at 7.)

- 3 -

their counsel asked him to identify specific comparable transactions involving the sale of BOBs underlying his multiples, Mr. Linn refused to identify the names, revenues, locations, and acquisition prices as confidential and indicted that he based the multiples on the "the judgment [he] . . . gained after 22 years of experience." (Doc. 269-1 at 19–23.) Defendants contend that in basing the multiples on his "experience" or "judgment" garnered during his career, Mr. Linn's factual basis for his opinion is based on nothing more than his own *ipse dixit*. (Doc. 269 at 11–14.)

USI argues that Mr. Linn's opinion is adequately based on his experience. (Doc. 301 at 3–6.) USI further argue his opinion is admissible because his testimony will go to general industry principles, which are within the province of his experience, rather than providing an opinion drawn from the specific facts of the case. (*Id.*)

USI frames Mr. Linn's testimony as one going to general principles only. To support its arguments, USI relies on the Advisory Committee's note to the 2000 amendments to Rule 702. (*See id.* at 5.) There, the Advisory Committee noted:

> If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably. ***Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.*** For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles.

Fed. R. Evid. 702 advisory committee's notes to 2000 amendment (emphasis added). The Advisory Committee further noted, "For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case." *Id.* Additionally, where an expert relies solely or primarily on his experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.*

Mr. Linn has indicated that, although he has since retired, he had an extensive career in the insurance industry and involvement in various transactions. (*See, e.g.*, Doc. 269-1 at 17–21.) Those transactions included sales of entire insurance brokerages and specific BOBs. (*Id.*) Mr. Linn testified that he spoke with partners who worked at his former company for "touch points and points of reference for which he used to form [his] opinion" regarding the status of the marketplace and current pricing multiples. (Doc. 269-1 at 6–7.) These conversations related to the sale of entire brokerage firms, not BOBs, and Mr. Linn did not receive any information regarding any specific transactions. (*Id.* at 11–14.) He further testified that asking about BOBs in particular was unnecessary because the valuation of a BOB incorporates a discount from the valuation of the entire firm, which remained the same since the time he was with the company. (*See id.* at 14.) Mr. Linn proceeded to explain that the discounting applied to a BOB varies substantially depending on its nature, quality, size, and the age of the producers. (*Id.* at 14–15.) The discount also varied depending on location of the BOB, growth rates, quality of carriers, quality of service staff, morale, and profitability history. (*Id.* at 15–16.) Through evaluating "all of the acquisitions in [his] experience," Mr. Linn reached the general range of multiples. (Doc. 301-1 at 5.)

Mr. Linn's qualifications are not reasonably in question. USI characterizes Mr. Linn's opinions as providing an "overview" of insurance brokerages and "general" descriptions of the "typical" process and pricing for asset acquisitions. (Doc. 301 at 4.) These generalizations may be true in part; however, Mr. Linn goes a step further than discussing general principles. Though it is possible that business assets like BOBs may sell at some multiple that accounts for various discounts or premiums based on various performance and market-based factors as a matter of general principle, Mr. Linn opines to a specific range of multiples by applying that rule, i.e., the principle, to a set of unidentified facts. The proffered range of multiples is not a matter of general principle but rather a conclusion drawn from analytical reasoning based on Mr. Linn's facts and experience. But Mr. Linn refused to disclose the facts, i.e., the transactions, underlying the range, removing

- 5 -

the Court's ability to evaluate whether those transactions provide a sufficient factual basis to support his opinion. Fed. R. Evid. 702(b) (requiring the party offering expert testimony to demonstrate to the court that it is more likely than not that "the testimony is based on sufficient facts or data").

All that remains is Mr. Linn's reliance on his experience and judgment that he has garnered throughout his career. He indiscriminately included every transaction from his career without explaining how the various factors impacted his analysis to arrive at specific numbers that define the boundaries of the range. Consequently, Mr. Linn failed to link his experience in valuing BOBs with his conclusion on the range of multiples, and by never explaining how the relevant factors apply to determine a particular multiple, the Court is left with no basis to determine whether he reliably applied such factors to reach his ultimate conclusion. *See Kumho Tire*, 526 U.S. at 154 (explaining that an expert must establish the reliability of the principles and methods, "along with [the] particular method of analyzing data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant*"). In other words, without more, Mr. Linn generated his proffered range of multiples based on mere *ipse dixit*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting courts are not required to admit expert opinion evidence based on mere *ipse dixit* of the expert). Additionally, by failing to explain how the particular factors apply to discount a BOB, Mr. Linn's testimony on a range provides the jury with no guidance on how to determine the appropriate multiple within that range.

Therefore, the Court will exclude Mr. Linn's testimony pertaining to the specific range of market multiples. This exclusion, however, is narrow. Defendants' challenge pertains to the ranges themselves and not the general principles underlying the sales process. Mr. Linn may testify to the other general market-based principles addressed prior to arriving at the specific multiple.

2. <u>Enforceability and Interpretations of the Restrictive Covenants</u>

The parties dispute whether Mr. Linn's should be allowed to opine on whether the restrictive covenants in the Individual Defendants' employment agreements are industry

standard and reasonable. (Doc. 269 at 15–19; Doc. 301 at 7–10.) Their dispute primarily centers on whether his opinion is relevant to determine the enforceability of the restrictive covenants. The parties asserted these arguments prior to the Court's ruling on summary judgment where it made the relevant determinations on enforceability. (*See* Doc. 332.) Any further testimony is either unnecessary or irrelevant.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting** Defendants' Motion to Exclude Certain Trial Testimony and Opinions of Thomas R. Linn (Doc. 261).

Dated this 26th day of June, 2025.

Honorable Susan M. Brnovich
United States District Judge